FILED

2005 Mar-03  PM 01:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

KRISTY HORSLEY,

     Plaintiff,

vs.                                CASE NO. CV-04-J-0029-IPJ

ALLSTATE INSURANCE COMPAY, INC.
and HEWITT & ASSOCIATES, LLC

     Defendants.

**<u>MEMORANDUM OPINION</u>**

Pending before the court is the plaintiff's motion for partial summary judgment (doc. 24) and evidence in support of said motion, the defendant's response to said motion (doc. 25) and evidence in opposition.  Also pending before the court is defendant's motion for summary judgment (doc. 25) and evidence in support of said motion, the plaintiff's response to said motion and evidence in opposition, and the defendant's reply to the plaintiff's opposition (doc. 31). Having considered the motion, memoranda and evidence, the court finds as follows:

## I. Factual Background

The plaintiff, Kristy Horsley, was employed by the defendant, Allstate Insurance Company.[1]  Horsley depo. at 18.  From November 18, 2002 to February 24, 2003, Horsley took leave from work to give birth to her child.  Horsley depo. at 28-29.  Part of the plaintiff's leave of absence was paid and part was unpaid.  Horsley depo. at 40.  From November 18, 2002, to January 18, 2003, the plaintiff was on paid leave.  *Id.*  The paid portion of her leave ended on January 18, 2003.  *Id.*  During the paid portion of the plaintiff's leave, premiums for medical benefits were deducted from her paycheck.  Horsley depo. at 41.  However, during the unpaid portion of her leave, the company policy required the plaintiff to pay premiums for medical benefits through a direct billing process because the plaintiff was not receiving a paycheck from which to deduct payments.  Def. Exhibit 12 to Horsley depo.

On February 3, 2003, the plaintiff spoke with a representative from the Allstate Benefits Center and was told that she would need to pay her monthly premiums in full while she was on unpaid leave of absence.  Horsley depo. at 147; Def. Exhibit 28 to Horsley depo. at H00006.  She was also told that extra amounts would not be deducted from her paycheck upon her return to work to cover the

---

[1]Defendant Hewitt & Associates, L.L.C. was dismissed from this case by joint stipulation of the parties on November 12, 2004 (doc. 21).

period of her unpaid leave.  Horsley depo. at  214-215; Def. Exhibit 28 to Horsley

depo at H00007.  She was told that "in order to avoid any lapse in coverages,

you're definitely going to want to go ahead and pay for that bill and then once

we've been notified that you're back at work and then we can go ahead and issue

you a refund if there's been any overpayments in your account."  Horsley depo. at

214; Def. Exhibit 28 to Horsley depo at H00006.  In addition, the plaintiff was also

told by the Allstate Benefits Center consultant that, "We won't be getting

additional payroll deductions," and "Extra amounts won't come out of your

check."  Horsley depo. at 215-216; Def. Exhibit 28 to Horsley depo at H00007.

Therefore, the plaintiff was told that deductions would not be taken out of her

check for the period of unpaid leave and that she would need to pay these premium

amounts.  Horsley depo. at 214-216; Def. Exhibit 28 to Horsley depo. at H00006-

H00007.

On or about February 10, 2003, the plaintiff received a bill for benefit

premiums for benefit coverage between January 19 (when the unpaid portion of her

leave began) through March 31, 2003.  Horsley depo. at 147-148; Def. Exhibit 21

to Horsley depo. at P00728.  The bill stated that late payments, partial payments, or

non-payments would result in a cancellation of benefits and that payment would be

due on March 1, 2003.  Def. Exhibit 21 to Horsley depo. at P00728-P00729.  The plaintiff did not pay this bill.  Horsley depo. at 150-151.

On or about March 10, 2003, the plaintiff received a different bill covering the period between January 19, 2003, (when the unpaid portion of leave began) to February 22, 2003, (when her leave ended).  Horsley depo. at 157-158; Def. Exhibit 21 to Horsley depo. at P00730.  The bill only included premiums for this time because the plaintiff had returned to work and premium amounts could then be taken out of her paycheck.  Daniels depo. at 81-82; Goodman depo. at 18-19; Def. Exhibit 4 to Goodman depo. at H00055-H00056.  Payment for this bill was due upon receipt.  Daniels depo. at 81-82; Def. Exhibit 4 to Goodman depo at H00055-H00056.  The plaintiff did not pay this bill.  Horsley depo at 156-158.

On March 12, 2003, the plaintiff spoke with Melvin Keith of the defendant's Human Resources Center.  Horsley depo. at 168-169.  The plaintiff was concerned because she believed the cost of premiums being taken out of her paycheck had increased.  Horsley depo. at 169.  Keith told the plaintiff that the increase in premiums covered the period she was on unpaid leave of absence.  *Id.*  However, the information given to the plaintiff by Mr. Keith was incorrect.  Daniels depo. at 46-47.  On April 9, 2003, the plaintiff's benefits were cancelled, effective January 19, 2003, because of a failure to pay for the premiums during the unpaid portion of

her leave.  Horsley depo. at 159.  In September of 2003, the plaintiff resigned from

her position at Allstate.  Horsley depo. at 51-52.

The plaintiff filed suit against her employer for the following employment

related claims: Title VII Sex Pregnancy Discrimination, Title VII Retaliation, the

Family Medical Leave Act (FMLA), the Employee Retirement Income Security

Act (ERISA), and the Fair Labor Standards Act (FLSA) (doc. 12).  The plaintiff

has moved for summary judgment on the FMLA claim (doc. 24), and the defendant

has moved for summary judgment on all of the claims (doc. 25).

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper

"if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  As the Supreme Court has

explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against a
> party who fails to make a showing sufficient to establish the existence of
> an element essential to that party's case, and on which that party will
> bear the burden of proof at trial.  In such a situation, there can be no
> genuine issue as to any material fact, since the complete failure of proof
> concerning an essential element of the non-moving party's case
> necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23.  The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of genuine issues of material fact. *Id*. at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324; FED. R. CIV. P. 56(e).  In meeting this burden, the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 587; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"The mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is material to an issue affecting the outcome of the case .... A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (quoting

*Haves v. City of Miami*, 52 F.3d 918, 921 (11ᵗʰ Cir. 1995)).  A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11ᵗʰ Cir. 1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11ᵗʰ Cir. 1993).  However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11ᵗʰ Cir. 1987).

### III. Legal Analysis

### Title VII Sex/Pregnancy Discrimination

The plaintiff sues the defendant for violation of Title VII of the Civil Rights Act of 1964 claiming that she was discriminated against based on her sex or pregnancy because of the cancellation of her benefits.  Verified First Amended Complaint at ¶ 52.  The defendant asserts that the Title VII sex/pregnancy discrimination claim fails because there is no evidence that her benefits were cancelled due to her sex.  Defendant's memorandum at 18.

To establish a prima facie case of discrimination based on sex under Title VII, the plaintiff must show (1) that she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated non-pregnant employees more favorably; and (4) she was qualified to do the job. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). The plaintiff has failed to point to any similarly situated employees that were treated more favorably. The plaintiff argues she does not have to identify specific non-pregnant employees that were treated differently from her because the employer did not comply with its own procedures and/or policies. Plaintiff's response at 5. *See, Byrd v. Lakeshore Hosp.,* 30 F.3d 1380, 1383 (11th Cir. 1994) (holding plaintiff does not have to identify specific non-pregnant individuals that were treated differently if the employer did not comply with its own policies or procedures). In *Byrd*, plaintiff was a pregnant employee who was fired for excessive absences even though the company's sick policy allowed for more time. *Byrd*, 30 F.3d at 1383-1384. Unlike the defendant in *Byrd*, here there is no evidence that Allstate did not comply with its own policies and/or procedures. The plaintiff's benefits were cancelled for non-payment under the policies and procedures of the employer's benefit program. Daniels depo. at 58; Def. Exhibit 21 to Horsley depo. at P00728-

P00729.  Therefore, the plaintiff cannot establish a prima facie case of

discrimination.

Even if the plaintiff could establish a prima facie case of discrimination, the

plaintiff cannot establish that the cancellation of her benefits because of the failure

to pay premiums was merely a pretext for discrimination.  If the defendant

articulates a legitimate reason for the cancellation of the benefits, "the presumption

of discrimination is eliminated and 'the plaintiff has the opportunity to come

forward with evidence ... sufficient to permit a reasonable factfinder to conclude

the reasons given by the employer were not the real reasons for the adverse

employment decision.'"  *Chapman v. AI Transport,* 229 F.3d 1012, 1024 (11th Cir.

2000) (citing *Combs v. Plantation Patterns,* 106 F.3d 1519, 1527-28 (11th Cir.

1997).  The defendant did have a legitimate reason for the cancellation because the

plaintiff failed to make premium payments.  Daniels depo. at 58.  In addition, the

plaintiff has provided no evidence that this reason was merely a pretext for

discrimination.  The plaintiff was told numerous times that she needed to pay her

premiums.  Horsley depo. at 147, 226-227; Def. Exhibit 28(b) to Horsley depo. at

H00006; Horsley depo. at 147-148; Def. Exhibit 21 of Horsley depo. at P00728;

Horsley depo. at 157-158; Def. Exhibit 21 to Horsley depo at P00730.  Her

benefits were cancelled for non-payment, and there is no evidence that her benefits were cancelled because of her sex/pregnancy.

Because the plaintiff cannot demonstrate that the cancellation of benefits was merely a pretext for discrimination, the defendant is entitled to summary judgment on the Title VII sex/pregnancy discrimination claim.

**Title VII Retaliation**

The plaintiff sues the defendant claiming she was retaliated against for making a discrimination claim. Verified First Amended Complaint at ¶ 60. The plaintiff argues that after she engaged in protected activity under Title VII, she experienced adverse job actions. Plaintiff's response at 7-8. Specifically, the plaintiff claims her work was criticized and that she was constructively terminated after filing a formal complaint for sex and pregnancy discrimination. Verified First Amended Complaint at ¶ 57-58. In her deposition, the plaintiff also alleges that she was retaliated against because she was subject to random file reviews when the attorney and paralegal she worked with were not reviewed at the same time. Horsley depo. at 384-385. The defendant filed a motion for summary judgment on that claim as well arguing that Allstate did not retaliate against the plaintiff.

"To establish a prima facie case for retaliation, the plaintiff must show that (1) she engaged in protected activity, (2) she suffered an adverse employment

action, and (3) there was a causal link between the protected activity and the

adverse employment action. *Stavropoulous v. Firestone,* 361 F.3d 610, 616 (11th

Cir. 2004). The plaintiff has met the first requirement because she engaged in

protected activity when she filed charges of discrimination with the EEOC. Def.

Exhibit 3 to Horsley depo. at P00548. In order to meet the second requirement, the

plaintiff must show that the adverse employment action suffered was "an ultimate

employment decision, such as a discharge or failure to hire, or other conduct that

alters the employee's compensation, terms, conditions, or privileges of

employment, deprives him or her of employment opportunities, or adversely

affects his or her status as an employee." *Bass v. Board of County Commissioners,*

256 F.3d 1095, 1118 (11th Cir. 2001). Conduct that does not qualify as an ultimate

employment decision must meet "some threshold level of substantiality" to be

considered an adverse employment action. *Wideman v. Wal-Mart Stores, Inc.,* 141

F.3d 1453, 1456 (11th Cir. 1998). The plaintiff claims she was retaliated against

when her work was criticized in a checkpoint interim review of her job

performance. Horsley depo. at 271-272. However, the checkpoint review does not

meet the requirements of an adverse employment action because it was not an

ultimate employment decision. The checkpoint review did not affect her pay or

status as an employee. Horsley depo. at 277. Checkpoint reviews were not kept as

permanent records in personnel files.  Horsley depo. at 373-374.  Further, any

salary raises were given at the time of the annual review rather than the checkpoint

review.  Horsley depo. at 275-277.  The negative checkpoint review and the

random file reviews do not meet the "threshold of substantiality" necessary to be

considered an adverse employment action for the purposes of Title VII's anti-

retaliation provision.

The plaintiff also claims that she was constructively discharged.  First

Verified Amended Complaint at ¶ 52.  Constructive discharge may qualify as an

adverse employment action for the purposes of a retaliation claim.  *Pool v. Country*

*Club of Columbus, Inc.,* 129 F.3d 551, 553 (11th Cir. 1997).  For a claim of

constructive discharge to be successful, the plaintiff must demonstrate that "terms

or conditions of employment under which she is asked to work are so intolerable

that a reasonable person in her position would have been compelled to resign."

*Thomas v. Dillard Dept. Stores, Inc.,* 116 F.3d 1432, 1434 (11th Cir. 1997).   The

plaintiff claims that she received unwarranted criticism on a check point review

and that she was subject to random file reviews while other employees were not

subjected to these reviews.  Horsley depo. at 271-272, 384.  Plaintiff also claims

that statements made by her supervisor, Ronnie Moore, contributed to the

conditions resulting in constructive discharge.  Horsley depo. at 333-334.

Specifically, the plaintiff stated that, "[Ronnie] said that when he goes to these management meetings and when they come up to him, he said that they're saying - when they come to him and say: ... Kristy, they're not saying what are we going to do about fixing the problem with the survey, they're saying what are we going to do about getting rid of the problem." *Id.*

The conditions complained of by the plaintiff do not meet the requirements for constructive discharge. First, there is evidence to support the criticism of the plaintiff's work on the checkpoint review. For example, the attorney the plaintiff worked for, Daniel Gels, had discussed with the plaintiff ways in which she could improve her work performance. Gels depo. at 24-26, 27-28. Gels also mentioned to Moore that he was concerned that the plaintiff was having difficulty completing tasks in a timely manner. Gels depo. at 51. Gels even became concerned that these problems he was having might cause problems for him with the Alabama State Bar. Gels depo. at 75. Therefore, there is evidence to show that the criticism of the plaintiff in the checkpoint review was not unwarranted. The plaintiff may have been subject to random file reviews while other employees were not subjected to the same types of reviews, but review of an employee's work does not create conditions so intolerable that a reasonable person would have been compelled to resign. Lastly, the statement made by Moore about "the problem" was not made

directly about the plaintiff, and Moore even testified that Horsley was not in danger

of losing her job at the time she resigned.  Moore depo. at 107.  The plaintiff never

received notice from Allstate that her employment was in jeopardy.  Horsley depo.

at 278.  In order to be terminated for performance reasons at Allstate, other than for

something egregious, the employee must be first given a job in jeopardy warning.

Horsley depo. at 278-280, 394-395; Def. Exhibit 41 to Horsley depo. at P00191.

Horsley never received a job in jeopardy warning during her employment at

Allstate.  Horsley depo. at 278.  The conditions complained of by the plaintiff

cannot be said to have been so intolerable that a reasonable person in her position

would have been compelled to resign.  Therefore, the defendant is entitled to

summary judgment on the retaliation claim.

### The Family Medical Leave Act

The plaintiff claims that Allstate violated 29 U.S.C. § 2614 of the Family

Medical Leave Act (FMLA) by cancelling her benefits.  Verified First Amended

Complaint at ¶ 67.  Both the plaintiff and the defendant have moved for summary

judgment on this count.

The plaintiff argues that under 29 U.S.C. § 2614, the defendant was required

to restore the plaintiff to "an equivalent position with equivalent employment

benefits, pay, and other terms and conditions of employment."  29 U.S.C. §

14

2614(a)(1)(B).  According to 29 C.F.R. § 825.212, if an employee misses premium payments during FMLA leave, "the employer must still restore the employee to coverage/benefits equivalent to those that the employee would have had if the leave had not been taken and the premium payment(s) had not been missed." Under this regulation, Allstate was required to restore the plaintiff's benefits even though she failed to make premium payments during the unpaid portion of her leave.  Allstate did comply with this regulation because Allstate initially restored the plaintiff's benefits.  Allstate only retroactively cancelled the benefits because of the plaintiff's failure to pay the required premiums.  Horsley depo. at 159; Daniels depo at 58-59.  Even though Allstate was required to restore benefits, the plaintiff was still responsible to make the necessary premium payments.  29 C.F.R. § 825.210.   Under 29 C.F.R. § 825.210, "any share of group health plan premiums which had been paid by the employee prior to FMLA leave must continue to be paid by the employee during the FMLA leave period."  In addition, an employee entitled to reinstatement is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken leave." 29 U.S.C. § 2614(a)(3)(B). An employee that did not make the necessary premium payments that had not taken leave under the FMLA would have his or her benefits cancelled.  Lastly, the

employer provided the required notice for cancellation of benefits due to the failure

to make premium payments that is necessary under 29 U.S.C. § 2614(a)(3)(B).

Def. Exhibit 21 to Horsley depo. at P00729, P00731.  For the reasons above,

Allstate did not violate the FMLA by retroactively cancelling the plaintiff's

benefits because of her failure to make the required premium payments.  Therefore,

summary judgment should be granted for the defendant on the FMLA claim.

## ERISA

The plaintiff claims that Allstate violated ERISA because Allstate breached

its fiduciary duty to the plaintiff when the plaintiff was given incorrect information

about the benefits plan.  Verified First Amended Complaint at ¶ 69-70.   Under 29

U.S.C. § 1002(21)(A), the defendant is a fiduciary to the extent that the defendant

exercises discretionary authority or responsibility over the management of the

benefits plan.  "Where the administrator of an ERISA benefits plan has

discretionary authority to determine eligibility for benefits, a court reviews that

determination under the arbitrary and capricious standard."  *Godfrey v. BellSouth*

*Telecommunications, Inc.,* 89 F.3d 755, 757 (11th Cir. 1996).  Rodney Daniels, the

plan administrator for Allstate, testified that he had discretion to determine

eligibility issues.  Daniels depo. at 104-105.  Because the plan administrator of the

Allstate benefits plan was given discretion to determine eligibility issues, the

16

decision to cancel the plaintiff's benefits is reviewed under the arbitrary and capricious standard. *Godfrey,* 89 F.3d at 757.

The cancellation of the plaintiff's benefits cannot be said to be arbitrary or capricious. Although the plaintiff argues that she was given incorrect information about Allstate's policy dealing with payment of premiums during unpaid leave from Melvin Keith, a manager with Allstate's Human Resources Service Center, she was given the correct information a number of times. Horsley depo. at 159, 168-169. The plaintiff was told by a representative from the Allstate Benefits Center prior to speaking with Melvin Keith that she needed to pay the premiums for the time period she was on leave of absence. Horsley depo. at 147, 226-227. She was also told that the payments would not be payroll deducted. Horsley depo. at 201-204, 214-215, 217-218; Def. Exhibit 28(b) to Horsley depo. at H00007. In addition, the plaintiff was sent two bills that indicated she needed to pay benefit premiums. Def. Exhibit 23 to Horsley depo. Lastly, the Policy Guide specifically states that, "The employee is still responsible for paying his/her portion of premium via the leave of absence direct bill process administered by the Allstate Benefits Center." Horsley depo. at 101-102; Def. Exhibit 12 to Horsley depo. The decision to cancel the plaintiff's benefits was neither arbitrary nor capricious. The decision was fully supported by the terms of the Allstate benefits plan. In addition,

17

the plaintiff was told numerous times that she needed to pay her premiums and that premiums for the period of unpaid leave would not be payroll deducted. Therefore, the record does not support a finding of an ERISA violation, and the defendants are entitled to summary judgment on the ERISA claim.

## Fair Labor Standards Act

The plaintiff claims that the defendant violated the Fair Labor Standards Act (FLSA) because she was paid for only 38.75 hours a week and she frequently worked more than 40 hours per week. Verified First Amended Complaint at ¶ 76-78. The defendant has filed a motion for summary judgment on this count as well.

Under the FLSA, "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours ... specified at a rate not less than one and one-half times the regular rate at which he is employed. 29 U.S.C. § 207(a)(1). If the employer does not request that the employee work additional hours, but "the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted." *Reich v. Department of Conservation and Natural Resources,* 28 F.3d 1076, 1082 (11th Cir. 1994). Other Allstate employees testified that they observed Horsley working through her lunch break. Hargrove depo. at 20; Howell depo. at 14. In addition, the plaintiff testified that her boss,

Ronnie Moore, observed her eating lunch at her desk.  Horsley depo. at 411.  The

plaintiff can identify specific dates and amounts of time for which she was not

compensated.  Def. Exhibit 44 to Horsley depo.

Claims under the FLSA must concern more than *de minimis* amounts of time

worked.  *Davis v. Charoen Pokphand, Inc.,* 302 F.Supp 2d 1314,1323 (M.D.A.L.

2004).  There is a genuine issue of material fact as to whether the plaintiff was

"required to give up a substantial measure of [her] time and effort" for which she

was not compensated or whether the time at issue here was merely *de minimis*.  *Id*.

Although there is some evidence showing that Allstate did not know that the

plaintiff was working overtime hours for which she was not compensated because

she did not follow Allstate's timekeeping procedures for reporting overtime work,

there is a genuine issue of material fact as to whether the plaintiff is entitled to

compensation for the hours she alleges she worked in excess of 38.75 hours per

week.  Therefore, summary judgment for the defendant should not be granted on

the plaintiff's FLSA claim.

## IV.  Conclusion

Having considered the foregoing, the court is of the opinion that the

defendant's motion for summary judgment on the plaintiff's claims for violations

of Title VII Discrimination, Title VII Retaliation, the FMLA, and ERISA are due

to be granted.

It is therefore **ORDERED** by the court that the defendant's motion for

summary judgment be and hereby is **GRANTED** to the extent that judgment is

rendered in favor of the defendant and against the plaintiff on the following claims:

Title VII Sex/Pregnancy Discrimination, Title VII Retaliation, FMLA, and ERISA.

The court further finds that, in the light most favorable to the non-moving

party, genuine issues of material fact remain with regard to the issue of whether the

defendant violated the FLSA and whether the plaintiff is entitled to overtime

compensation.

It is therefore **ORDERED** by the court that the defendant's motion for

summary judgment on the plaintiff's FLSA claim be and hereby is **DENIED**.

The plaintiff's motion for partial summary judgment (doc. 24) is **DENIED**

as to plaintiff's FMLA claim (Count III), for the reasons set forth granting the

defendant's motion on this claim.

**DONE** and **ORDERED** this the 3rd day of March, 2005.

_____

INGE PRYTZ JOHNSON

U.S. DISTRICT JUDGE